## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRISTOPHER JOHN BROWN,<br>HEATHER ANN VAN WYHE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-0418-CVE-JFJ |
| | ) | |
| STATE FARM FIRE AND CASUALTY<br>COMPANY, a Foreign for Profit Insurance<br>Corporation, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court are defendant's motion for partial summary judgment (Dkt. # 34); plaintiffs'

response (Dkt. # 58); defendant's reply (Dkt. # 75); defendant's supplement to its motion for partial

summary judgment (Dkt. # 99); plaintiffs' motion for an extension of time to respond to defendant's

supplement (Dkt. # 105); defendant's omnibus motion in limine (Dkt. # 31); plaintiffs' response to

defendant's omnibus motion in limine (Dkt. # 47); defendant's reply as to its omnibus motion in

limine (Dkt. # 61); defendant's motion to limit certain testimony (Dkt. # 32); plaintiffs' response to

defendant's motion to limit certain testimony (Dkt. # 48); defendant's reply as to its motion to limit

certain testimony (Dkt. # 62); plaintiffs' motion in limine (Dkt. # 33); and defendant's response to

plaintiffs' motion in limine (Dkt. # 46).  This case arises from an insurance claim dispute regarding

the extent of and coverage for hail damage to plaintiffs' roof.  Dkt. # 1.  On August 19, 2020,

plaintiffs Christopher Brown and Heather Van Wyhe filed a complaint (Dkt. # 1) against defendant

State Farm Fire and Casualty Company (State Farm) alleging breach of contract (count 1) and bad

faith (count 2).  Id. at 3-4.  Plaintiffs "seek contractual, bad faith and punitive damages" against

defendant.  Id. at 5.  Consequently, defendant moves, pursuant to Fed. R. Civ. P. 56, for partial

summary judgment on plaintiffs' bad faith claim (count 2) and on the issue of punitive damages.

Dkt. # 34.  The Court has jurisdiction, pursuant to 28 U.S.C. § 1332, as the parties are diverse and

the amount in controversy exceeds $75,000, exclusive of interest and costs.  Dkt. # 1, at 1-2; see also

28 U.S.C. § 1332(a), (c).

## I.

The following facts are not in dispute: on March 27, 2020, a "significant" hail storm

"affected a large swath of the Owasso area.  This storm was classified by State Farm as a catastrophe

event . . . due to the claim volume it generated and the amount of damage it caused."  Dkt. # 58, at

10; Dkt. # 75, at 3.  Plaintiffs' residence in Owasso, Oklahoma was damaged as a result of the March

27, 2020 hail storm.  Dkt. # 58, at 10; Dkt. # 75, at 3.  Plaintiffs' home has "an asphalt composition

shingled roof with sixty-three roof facets.  The roof is very tall, steep and complex: the predominant

pitch of [p]laintiffs' roof is 14/12, or 49.4 degrees."  Dkt. # 58, at 10; Dkt. # 75, at 3.[1]  "A typical

asphalt composition shingle like [p]laintiffs' consists of an asphalt/fiberglass shingle mat and granule

pieces that coat the outside surface of the shingle.  These granules are designed to protect the

asphalt/fiberglass shingle mat from UV exposure[.]" Dkt. # 58, at 12; Dkt. # 75, at 4.

Fearing that their roof had been damaged during the March 27, 2020 hail storm, plaintiffs

contacted Blacksmith Roofing's owner, Steven Ragsdale, and he inspected plaintiffs' roof within

---

[1]     The Court notes that defendant disputes certain parts of the cited portion of plaintiffs'
statement of additional material facts, Dkt. # 58, at 10; however, defendant does not dispute
that plaintiffs' roof is asphalt composition shingled, tall, steep, and complex with a 14/12
pitch.  Compare Dkt. # 58, at 10, with Dkt. # 75, at 3.

a few weeks after the storm. Dkt. # 58, at 11; Dkt. # 75, at 4. Mr. Ragsdale affirmed that he "spent over an hour inspecting [plaintiffs'] roof for hail damage. [He] inspected all directional slopes, and found hail damage across the roof. There were numerous hail caused bruises from hail impacts and widespread, hail caused granular loss across the roof surface on all slopes." Dkt. # 58, at 11-12; Dkt. # 75, at 4; see also Dkt. # 34-15, at 5 (Steven Ragsdale deposition testimony). In Mr. Ragsdale's opinion, plaintiffs' "roof needed to be replaced as a result of these hail related damages[,]" and he "recommended that a claim be submitted to State Farm for these damages." Dkt. # 58, at 11-12; Dkt. # 75, at 4.

On May 5, 2020, plaintiffs timely submitted a claim to State Farm for the "hail damage sustained to their roof." Dkt. # 58, at 12; Dkt. # 34, at 3; Dkt. # 75, at 4. At the time of loss, plaintiffs' residential property was insured under defendant State Farm's Homeowners' Insurance, policy number 36-BL-P673-1 (the policy). Dkt. # 34, at 2; Dkt. # 58, at 4, 11. The policy states, in pertinent part, "[w]e cover the dwelling and materials and supplies located on or adjacent to the residence premises"; "[w]e will pay for accidental direct physical loss to the property"; and "losses insured" includes "windstorm or hail" damage. Dkt. # 34-4, at 9, 16; Dkt. # 58, at 11. "The policy does not exclude hail bruising or hail caused granular loss, nor does the policy limit payment for hail damage to composition shingles to instances where hail has penetrated through the shingle mat." Dkt. # 58, at 11; Dkt. # 75, at 4. Further, State Farm's claim guidelines[2] state, in pertinent part,

---

[2]    The Court notes that a single page of State Farm's claim guidelines was filed under seal. Dkt. # 58-1. The Court acknowledges that State Farm's claim guidelines handbook may be confidential, proprietary information in its entirety. However, as to the short excerpts of a single page of the claim guidelines reproduced in this opinion and order, there is nothing proprietary contained therein that would necessitate confidentiality or filing this opinion and order under seal.

"[d]amage from hail . . . may be observed to a composition roof surface.  On a composition roof surface, this could include bruising, fractures, punctures or excessive granular loss."  Dkt. # 58-1, at 2.

On May 17, 2020, "independent adjuster" Matthew Buchman scheduled an inspection of plaintiffs' property for May 27, 2020, which was later rescheduled to June 6, 2020 because of rain.  Dkt. # 34, at 3; Dkt. # 58, at 5.  On June 6, 2020, Mr. Buchman inspected the property.  Dkt. # 34, at 3; Dkt. # 58, at 5.  Mr. Ragsdale had a scheduling conflict, but Blacksmith Roofing employee, Donald Stretz, attended in his place.  Dkt. # 58, at 13; Dkt. # 75, at 4.  Mr. Stretz affirmed that he discussed Mr. Buchman's findings with him after Mr. Buchman concluded his inspection.  Dkt. # 58, at 14; Dkt. # 75, at 5.  Mr. Stretz further affirmed that, during his conversation, Mr. Buchman stated that 1) "he found hail damage on the roof"; 2) "he would normally buy the roof because of the hail damage"; 3) "the roof would not be paid for by State Farm"; 4) "the local State Farm boss was 'crazy strict' and would go after the field adjuster if they didn't like the field adjuster's call"; and 5) Mr. Buchman did not "want any 'blow back' from management."  Dkt. # 58, at 14; Dkt. # 75, at 5.[3]  Notably, in his deposition, Mr. Buchman denied telling Mr. Stretz anything along the lines of State Farm not paying out hail damage claims or the local State Farm boss going after field adjusters.  Dkt. # 34-12, at 66.  Notwithstanding, Mr. Buchman's notes ,which he input directly into plaintiffs' State Farm claim file, id. at 68, state that there was "no [accidental direct physical loss] to shingles on any

---

[3]     The Court notes that defendant argues that certain evidence is inadmissible--for example, defendant argues that certain proffered evidence is hearsay or testimony from a witness without personal knowledge--and therefore, plaintiffs are unable to substantiate their bad faith claim relying solely on said allegedly inadmissible evidence, see, e.g., Dkt. # 75, at 5, 8-10.  However, the Court finds that determining the admissibility of certain evidence is premature at this stage, and the Court will not speculate as to the context in which said evidence will be offered at trial.

slope, valley, or ridge. [S]oft metals have small damage[.]" Dkt. # 34-5, at 5.  Accordingly, State

Farm Team Manager, Rebecca Spelce, "prepared an estimate for repairs to the soft metals, but the

total estimate was below [p]laintiffs' deductible of $8,259[.]" Dkt. # 34, at 3; Dkt. # 58, at 6.  On

June 15, 2020, Ms. Spelce sent plaintiffs a letter informing them that State Farm has "determined

[that plaintiffs'] loss does not exceed [their deductible].  Therefore, [State Farm] is unable to make

a payment on this claim."  Dkt. # 34, at 4; Dkt. # 58, at 6; see also Dkt. # 34-8 (June 15, 2020 State

Farm letter to plaintiffs).

      After the June 6, 2020 inspection resulted in the State Farm conclusion that there was no hail

damage to plaintiffs' roof shingles, Mr. Ragsdale prepared an estimate for the total replacement cost

of plaintiffs' roof, which was $62,402.41 at that time, Dkt. # 34-9, at 3.  Dkt. # 58, at 14; Dkt. # 75,

at 5.  Further, Mr. Ragsdale recommended that plaintiffs reach out to local public adjuster, Brianna

Case.  Dkt. # 58, at 14-15; Dkt. # 75, at 5-6.  Ms. Case's public adjuster role entails "represent[ing]

first party insureds in residential . . .property insurance claims."  Dkt. # 57-7, at 2.  Additionally,

plaintiffs "requested that State Farm re-inspect [the roof damage], and provided to State Farm

additional photographs of the damages and the Blacksmith Roofing estimate.  Dkt. # 58, at 15; Dkt.

# 75, at 6.  Consequently, State Farm agreed to conduct a second inspection of plaintiffs' roof.  Dkt.

# 34, at 4; Dkt. # 58, at 6.  Ms. Case inspected plaintiffs' roof prior to State Farm's second

inspection, and testified that plaintiffs' roof "had widespread hail damage in the form of impacts and

bruises, [and] it also had severe granular loss from the hailstorm."  Dkt. # 57-8, at 10.  Ms. Case

further testified that in her opinion, "there was no . . . obvious reason that [the State Farm field

adjusters] should have missed the damage.  It was blatantly obvious. . . . [the hail storm] had totaled

out both [of plaintiffs'] cars, all the collateral [damage] was there, and it was obvious."  Id. at 11-12.

Ms. Case testified that both Mr. Ragsdale and Mr. Stretz conveyed to her the same story that Mr. Buchman "saw damage" but that the new State Farm bosses "were strict" about paying for hail damage.  Dkt. # 57-8, at 13.

On July 20, 2020, State Farm's independent adjuster, Mark Logsdon, performed a second inspection of plaintiffs' roof.  Dkt. # 58, at 15; Dkt. # 75, at 6.  Public adjusters Ms. Case and Kyle Baker were present at the second inspection, representing plaintiffs.  Dkt. # 58, at 15; Dkt. # 75, at 6.  Ms. Case testified that she told Mr. Logsdon that when she inspected plaintiffs' roof, she found "hail impacts, hail bruising, [and] widespread granular loss from the hail[.]" Dkt. # 57-8, at 16.  Notably, Ms. Case affirmed that, before Mr. Logsdon inspected the roof, she told him that plaintiffs' roof "needed to be replaced because of the hail damage." Dkt. # 57-7, at 2.  According to Ms. Case's sworn affidavit and deposition testimony, when Ms. Case told Mr. Logsdon about the extent of the hail damage (and before he inspected the roof himself), he "raised his eyebrows" and stated that "State Farm doesn't pay for hail caused granular loss, and will not consider hail damage to shingles unless the hail breaks through the fiberglass mat."  Id. at 2-3 (Brianna Case sworn affidavit); Dkt. # 57-8, at 16 (Brianna Case deposition testimony).  Although Mr. Logsdon does not address directly whether he made such a statement to Ms. Case, he testified that he would consider either shingle bruising or fracturing as hail damage.  Dkt. # 34-13, at 19 (Mark Logsdon deposition).  In other words, Mr. Logsdon testified that, for purposes of a State Farm inspection, he would include a bruised shingle--regardless of whether it was penetrated or fractured all the way to the mat--in his assessment of hail damage.  Id.

After conducting his inspection, Mr. Logsdon stated in his State Farm claim file notes that he "is in agreement with [the] prior adjuster['s] decision on roof determination"; however, he did

6

find "additional damage to downspouts and gutter screens," but makes no mention of any damage to plaintiffs' roof shingles.  Dkt. # 34-5, at 2.  State Farm's claim file for plaintiffs' roof damage states under "facts of loss": "Final: No [accidental direct physical loss] to shingles on any slope, valley, or ridge," and indicated that the overall severity was "light damage[.]"  Id. at 1.  Accordingly, on July 23, 2020, State Farm sent plaintiffs a second letter stating, in pertinent part, State Farm "ha[s] determined [that plaintiffs'] loss does not exceed [their] $8,259.00 deductible.  Therefore, [State Farm is] unable to make a payment on this claim."  Dkt. # 34-11.  The letter was signed by Mr. Logsdon.  Id.  Plaintiffs filed the present suit against State Farm on August 19, 2020.  Dkt. # 34, at 5; Dkt. # 58, at 8.[4]

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  "[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery[,]" Fed. R. Civ. P. 56(b), including before any discovery has been conducted.  "Movants for summary judgment bear the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." Silverstein v. Federal Bureau of Prisons, 559 F. App'x 739, 752 (10th Cir. 2014); see also Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir.

---

[4]     The Court notes that there are other facts, not summarized here, that are relevant to plaintiffs' breach of contract claim (count 1).  For purposes of defendant's motion for partial summary judgment (Dkt. # 34), the Court will consider the facts most pertinent to the issues of bad faith (count 2) and punitive damages only.

1998).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.  Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Defendant argues that State Farm is entitled to partial summary judgment on the bad faith count because it "conducted a good faith investigation . . . [and] [t]he parties simply disagree over the cause and extent of [p]laintiffs' roof damage, but [p]laintiffs have no evidence that the claim was denied in bad faith or that State Farm engaged in any conduct that would support a punitive damages award."  Dkt. # 34, at 1.  Plaintiffs respond that the Court should deny defendant's motion for partial summary judgment because "genuine issues of material fact exist upon which a reasonable jury could conclude that [d]efendant's investigation, evaluation and denial of [p]laintiffs' insurance claim were unreasonable and in bad faith."  Dkt. # 58, at 1.

a.    *Bad Faith*

The Court finds that genuine disputes of material fact exist such that a reasonable jury could find that State Farm acted in bad faith.  The Oklahoma Supreme Court has held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty

8

gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." Christian v. Am. Home. Assurance Co., 577 P.2d 899, 904 (Okla. 1977). "The core of a bad-faith claim 'is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy.'" Flores v. Monumental Life Ins. Co., 620 F.3d 1248, 1255 (10th Cir. 2010) (quoting McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 587 (Okla. 1981)). To succeed on a bad faith claim, plaintiffs "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of [plaintiffs'] claim." Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993); accord Shotts v. GEICO Gen. Ins. Co., 943 F.3d 1304, 1314 (10th Cir. 2019). According to the Tenth Circuit, courts generally use a two-step analysis to determine whether a plaintiff has made a sufficient showing of bad faith. Shotts, 943 F.3d at 1314-15. The Court considers 1) "whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim"; and 2) "if the court determines there is a legitimate dispute between the parties, . . . whether the plaintiff offered specific additional evidence to demonstrate bad faith." Id. at 1315. "The additional evidence required for this showing" may include evidence that 1) "the insurer did not *actually* rely on th[e] legitimate [dispute] to deny coverage"; 2) the insurer "denied the claim for an illegitimate reason"; 3) the insurer "otherwise failed to treat the insured fairly"; and 4) "the insured performed an inadequate investigation of the claim." Id. (internal quotations and citations omitted) (emphasis and alterations in Shotts, 943 F.3d at 1315).

For step one, defendant argues that "there is a legitimate dispute [as to] whether coverage exists for hail damage to [p]laintiffs' roof and the scope of any required repairs, and State Farm had a justifiable reason for withholding payment under the policy for the alleged damage to [p]laintiffs'

roof shingles." Dkt. # 34, at 11.  Further, the undisputed facts establish that there is a difference of opinion between plaintiffs and defendant as to the cause and extent of the hail damage, which presents a legitimate dispute regarding coverage and the value of plaintiffs' claim.  Compare Dkt. # 34-15,at 5 (Steven Ragsdale deposition), with Dkt. # 57-8, at 12 (Brianna Case deposition), and Dkt. # 34-5 (State Farm claim file notes).  Therefore, step one is satisfied, and the Court must proceed to step two.

For step two, whether plaintiffs offered additional evidence to demonstrate bad faith, the undisputed facts establish that several witnesses testified under oath as to information about State Farm's practices of 1) intimidating field adjusters to find no hail damage to roof shingles (Dkt. # 58, at 14; Dkt. # 75, at 5); and 2) ignoring hail damage to roof shingles unless the hail penetrated through the fiberglass mat (Dkt. # 57-7, at 2-3; Dkt. # 57-8, at 16).  It is also undisputed that plaintiffs' policy coverage includes hail damage, and the policy language and State Farm's claim guidelines do not distinguish hail damage coverage based on whether hail penetrates through the shingle mat.  Further, plaintiffs present additional bad faith evidence--the January 29, 2021 deposition testimony of Kerry Clanton, a field adjuster for State Farm in a different proceeding involving hail damage to a roof. Dkt. # 57-16.  Mr. Clanton's testimony substantiated the allegation that "hail impacts and bruises don't constitute damage unless they penetrate the back side of the mat, [which was] something [Mr. Clanton was] taught by State Farm to apply to their claims." Dkt. # 57-16, at 6.  Plaintiffs argue that State Farm's policy of ignoring hail damage that does not penetrate through the shingle mat is "outside of insurance industry standards, and effectively limits payment under the policy to only the rarest and most severe hail storms[.]" Dkt. # 58, at 20.

Based on plaintiffs' proffered evidence, the Court finds that a reasonable jury could conclude that State Farm did not <u>actually</u> rely on the legitimate dispute to deny coverage, and denied plaintiffs coverage for an illegitimate reason.  Specifically, if plaintiffs sufficiently establish at trial that State Farm has a practice of ignoring hail damage that does not penetrate the shingle mat, or intimidating "independent adjusters" to ignore anything but the most severe hail damage, a reasonable jury could find that State Farm acted in bad faith.  That is, State Farm relied on an arbitrary distinction between hail bruising and hail fracture--even though both compromise the integrity and longevity of a roof--as a means of denying all but the most severe roof damage claims.  Thus, the Court finds that genuine disputes of material fact exist such that a reasonable jury could conclude that State Farm did not have a good faith basis for withholding payment for plaintiffs' roof damage claim.  Accordingly, the Court finds that defendant's motion for partial summary judgment on the bad faith claim (count 2) should be denied.

b.   *Punitive Damages*

Defendant argues that the record evidence in this case "is not sufficient to support submission of the issue of punitive damages to the jury."  Dkt. # 34, at 13.  Plaintiffs respond that considering the punitive damages issue at this stage is premature; notwithstanding, the record evidence is sufficient "to show that [d]efendant acted unreasonably and wrongfully . . . and, at a minimum, recklessly and with malice disregarded its duty of good faith and fair dealing" as to plaintiffs' claim. Dkt. # 58, at 27-28.

Under Oklahoma statute, a jury may award punitive damages "[w]here the jury finds by clear and convincing evidence that . . . [a]n insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured[.]"  OKLA. STAT. tit. 23, § 9.1(B)(2).  The Court agrees with

plaintiffs that ruling on the issue of punitive damages is premature at this stage.  Based on the Court's determination of the admissibility of certain evidence at trial, a reasonable jury could find by clear and convincing evidence that State Farm either recklessly disregarded or intentionally and with malice breached its implied duty of good faith and fair dealing as to plaintiffs.  See Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 893-94 (10th Cir. 2006).  Therefore, the Court finds that genuine disputes of material fact exist as to the issue of punitive damages, and defendant's motion for partial summary judgment as to punitive damages should be denied.[5]

   c. *Defendant's Supplement to Its Motion for Partial Summary Judgment (Dkt. # 99)*

   In light of the Court's analysis of the key facts pertinent to the issues of bad faith and punitive damages, supra, the Court has reviewed defendant's supplement to its partial summary judgment motion (Dkt. # 99) and finds that the additional facts asserted therein are relevant to plaintiffs' breach of contract claim (count 1) only.  See, e.g., Dkt. # 99, at 2-5.  Thus, defendant's additional facts are not germane to and will not be considered for purposes of its motion for partial summary judgment on the issues of bad faith (count 2) and punitive damages.  Accordingly, plaintiffs' motion for an extension of time to respond to defendant's supplement to its motion for partial summary judgment (Dkt. # 105) is moot.

---

[5] The Court notes that plaintiffs request that this matter be set for oral argument on the issues presented by defendant's motion for partial summary judgment, Dkt. # 58, at 1; however, the Court finds that oral argument is not necessary, as the submitted evidence formed a sufficient basis for the Court's conclusion that defendant's motion for partial summary judgment should be denied.

## IV.

Defendant and plaintiffs move in limine to exclude certain evidence and argument at trial:

     *a.*    *Defendant's Omnibus Motion in Limine (Dkt. # 31)*

Defendant requests that the Court exclude from evidence certain issues and direct plaintiffs' counsel "to refrain from offering any evidence, posing any question, and making any statement or comment in the presence of the jury regarding any such matters." Dkt. # 31, at 1. Specifically, defendant moves to exclude eleven items: 1) "any evidence of damages allegedly suffered by [p]laintiffs that have not previously been disclosed"; 2) "testimony regarding or referenc[ing] any of the [d]efendant's advertising, mottos, or slogans"; 3) "mentio[n] [of] the Unfair Claims Settlement Practices Act"; 4) argument as to "State Farm ha[ving] a fiduciary duty"; 5) "golden rule arguments"; 6) "statements or references to any discovery, motions, or pretrial disputes"; 7) "affidavits of Steven Ragsdale, Donald Stretz, Jr., and Brianna Case"; 8) "[a]ny evidence relating to actions taken by [d]efendant and its counsel in the course of litigation"; 9)"[a]ny documents, exhibits, or information not provided within a reasonable time prior to trial"; 10) "any reference to any settlement discussions or proposals in this case, or to any offer of judgment made by any party"; and 11) "all [hearsay] statements by Mr. Ragsdale of what he was told by Mr. Stretz." Dkt. # 31, at 2-15.

As a preliminary matter, plaintiffs do not object to defendant's motion in limine as to testimony regarding or referencing any of the defendant's advertising, mottos, or slogans; mention of the Unfair Claims Settlement Practices Act; argument as to State Farm having a fiduciary duty; golden rule arguments; statements or references to any discovery, motions, or pretrial disputes; and any reference to any settlement discussions or proposals in this case, or to any offer of judgment

13

made by any party.  Dkt. # 47, at 5-6, 9.  Therefore, the Court finds that defendant's motion in limine as to those six items should be granted.  The Court now addresses the remaining five items.

    1.  Evidence of Plaintiffs' Damages That Have Not Been Disclosed Previously

   Defendant argues that, because plaintiffs failed to comply with Fed. R. Civ. P. 26 requirements, plaintiffs should be precluded from 1) "alleging [that] they incurred breach of contract damages exceeding the amount disclosed" in their expert report (Dkt. # 47-3, at 16); and 2) "alleging or presenting evidence that they incurred a specific amount or range of damages for [d]efendant's alleged bad faith."  Dkt. # 31, at 2-3.  Plaintiffs respond that as to contractual damages, plaintiffs disclosed to defendant the claimed amount ($74,788.11), which is based on a repair estimate contained in plaintiffs' June 2021 expert report (Dkt. # 47-3, at 16) prepared by Dan Galloway of Rugged Roofing and Construction, LLC (Rugged Roofing).  Dkt. # 47, at 2.  Plaintiffs further respond that, as to bad faith damages, plaintiffs provided to defendant a supplemental Rule 26 disclosure (Dkt. # 47-3, at 2-3) that gave notice to defendant that plaintiffs seek "damages from [d]efendant in the amount that will reasonably and fairly compensate them for all the detriment proximately caused by" defendant acting in bad faith, and "[t]o the extent [p]laintiffs' counsel is required to specify the amount of non-economic [damages] sought . . . that amount is $5,000,000."  Dkt. # 47, at 4; see also Dkt. # 47-3.

   Rule 26 states, in pertinent part:

> (a) . . . a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party . . . . A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or order
>
> . . .

(e) . . . [a] party who has made a disclosure under Rule 26(a)–or who has responded to an interrogatory, request for production, or request for admission–must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

Fed. R. Civ. P. 26(a), (e).  Here, as to contractual damages, plaintiffs provided notice to defendant in their supplemental Rule 26 disclosures (Dkt. # 47-3) that they are seeking actual damages in the amount of $74,788.11.  Defendant is requesting that the Court limit plaintiffs' actual damages (as to their breach of contract claim) to the amount stated in plaintiffs' Rugged Roofing expert report (Dkt. # 47-3, at 16).  However, the expert report provides an estimate of the net cost of replacing plaintiffs' roof as of June 2021.  Dkt. # 47-3, at 3, 16.  The estimate does not, for example, reflect the net replacement cost of plaintiffs' roof in 2022, which would account for inflation and other circumstances that may influence the actual cost of replacing plaintiffs' roof.  Notwithstanding, the expert report provides defendant with adequate notice--for purposes of Rule 26 disclosures--of the approximate amount of actual damages plaintiffs seek for their breach of contract claim.  Therefore, the Court finds that defendant's motion in limine  should be denied  as to plaintiffs alleging contract damages that exceed the amount disclosed in their Rugged Roofing expert report.

Next, the Oklahoma Supreme Court has found that an insured's damages for bad faith are measured by the amount owed under the insurance policy together with "those other items of recovery that are consistent with harm flowing from insurer's bad-faith breach of its implied-in-law duty to settle . . . [and the] indemnity for loss (under the contract) constitutes the centerpiece element of damages" for a bad faith claim.  Taylor v. State Farm Fire & Cas. Co., 981 P.2d 1253, 1258 (Okla. 1999).  In other words, the amount of bad faith damages is rationally related to 1) the alleged harm

flowing from defendant's bad faith conduct; and 2) the amount of contractual damages sought. Plaintiffs state in their supplemental Rule 26 disclosure that, in addition to contractual damages for the replacement cost of their roof, plaintiffs seek to recover damages for stress, worry, anxiety, uncertainty, embarrassment, and emotional damages. Dkt. # 47-3, at 3. Because plaintiffs disclosed to defendant that they are seeking at least $74,788.11 in contractual damages, and the amount of contractual damages is the "centerpiece element" of bad faith damages, the Court finds that defendant had adequate notice of what a reasonable computation of plaintiffs' bad faith damages would be. Accordingly, the Court notes that plaintiffs' claim for $5,000,000 in non-economic damages is excessive and far outside the scope of the Oklahoma Supreme Court's guidelines for bad faith damages computation, see Taylor, 981 P.2d at 1258, and thus will not be considered. In sum, the Court finds that defendant's motion in limine as to precluding plaintiffs from presenting evidence regarding a specific amount or range of bad faith damages should be denied.

2. Affidavits

Defendant moves to exclude the affidavits of Steven Ragsdale, Donald Stretz, Jr., and Brianna Case. Dkt. # 31, at 10. Specifically, defendant argues that these affidavits are inadmissible hearsay and, because these three witnesses can be present at trial, admission of the affidavits would be cumulative. Id. Plaintiffs respond that the affidavits are admissible under Fed. R. Evid. 801(d)(1) as a declarant-witness's prior statements, or under 804, if the witness is unavailable for trial. The Court finds that ruling on the admissibility of said affidavits is premature at this stage. The Court will not speculate as to the context in which the affidavits may be offered into evidence at trial; however, defendant may make any well-founded objections at trial. Thus, the Court finds that

defendant's motion in limine as to excluding the affidavits of Mr. Ragsdale, Mr. Stretz, and Ms. Case should be preliminarily denied without prejudice.

        3.      Actions Taken by Defendant and Its Counsel in the Course of Litigation

The Tenth Circuit and the Oklahoma Court of Civil Appeals have both found that "litigation conduct should rarely, if ever, be allowed to serve as proof of bad faith . . . [because] a claim for bad faith [must] be assessed from the standpoint of all facts known or knowable about the claim at the time the insured requested the insurer to perform its contractual obligation." Sims v. Travelers Ins. Co., 16 P.3d 468, 471 (Okla. Civ. App. 200).  In other words, "an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage[.]" Id. Consequently, insofar as defendant's litigation conduct was not a known or knowable fact as to plaintiffs' bad faith claim at the time of plaintiffs' request for payment pursuant to the policy, defendant's litigation conduct is not relevant to plaintiffs' claims.  Therefore, the Court finds that defendant's motion in limine as to its litigation conduct should be granted.

        4.      Documents, Exhibits, or Information Not Provided Within a Reasonable Time Prior to Trial

Defendant argues that plaintiffs informed defendant, after the deadlines passed for discovery and exchange of preliminary witness and exhibit lists, that plaintiffs "have additional photographs of hail damage, estimates and claims related to [p]laintiffs' vehicles, and new information on adjusting guidelines." Dkt. # 31, at 13.  Defendant "requests that if the documents that [p]laintiffs seek to add to their exhibit list are not disclosed by [p]laintiffs within a reasonable time before trial, that the documents be withheld from any trial of this matter." Id. at 14.  The Court has reviewed the relevant docket history in this case; specifically, defendant filed a motion to compel access and use

of plaintiffs' claim file related to their damaged vehicle (Dkt. # 89), which Magistrate Judge Jodi F. Jayne granted on February 28, 2022 (Dkt. # 100). Additionally, plaintiffs filed their response to defendant' motion for partial summary judgment (Dkt. # 58) and attached thereto State Farm's adjusting guidelines. Dkt. # 58-1. Thus, the Court finds that defendant's motion in limine as to documents, exhibits, or information not provided within a reasonable time before trial is moot.

5.      Mr. Stretz's Hearsay Statements to Mr. Ragsdale

Defendant moves, pursuant to Fed. R. Evid. 802 and 602, to exclude Mr. Ragsdale's testimony as to information Mr. Stretz conveyed to him from an adjuster. Dkt. # 31, at 15. Defendant argues that any such testimony constitutes hearsay within hearsay with no applicable exceptions, and that Mr. Ragsdale has no personal knowledge of the incident. Id.; Dkt. # 61, at 7. Plaintiffs respond that, while they plan to call Mr. Stretz to testify in addition to calling Mr. Ragsdale as a witness, Mr. Ragsdale's testimony about what Mr. Stretz conveyed to him falls within the present sense impression exception to the rule against hearsay. Dkt. # 47, at 11.

Rule 801 defines "hearsay" as an out-of-court statement offered for "the truth of the matter asserted in the statement." Fed. R. Evid. 801. Further, Rule 802 states that hearsay is generally inadmissible, unless excepted by 1) federal statute, 2) the Federal Rules of Evidence, or 3) "other rules prescribed by the Supreme Court." Fed. R. Evid. 802. Finally, under Rule 602, a witness may testify to only those matters of which that witness has personal knowledge. Fed R. Evid. 602.

The Court is unpersuaded by plaintiffs' argument. Namely, defendant is correct to point out that Mr. Stretz's statements to Mr. Ragsdale about the adjuster's statements constitute hearsay within hearsay, and plaintiff has not presented compelling argument as to how both layers of hearsay can be cured. Moreover, plaintiffs state that they plan to call Mr. Stretz, who has personal knowledge

18

of his conversation with the adjuster; thus, it is unclear why plaintiffs seek to introduce evidence of the contents of this conversation through Mr. Ragsdale as well. Therefore, the Court finds that, with respect to Mr. Ragsdale testifying about Mr. Stretz's conversation with the adjuster, defendant's motion in limine should be granted.

        b.      *Plaintiffs' Motion in Limine (Dkt. # 33)*

Plaintiffs move to exclude evidence as to: 1) the Court's ruling on any pretrial motions; 2) any "effect of claim, suit, or judgment on insurance rates"; 3) "any offer of payment or settlement which has been made in this litigation, any settlement negotiations, or the fact that such negotiations have occurred"; 4) "plaintiffs' net worth and financial condition"; 5) "arguments that Brian Heffernan, PE inspected plaintiffs' roof and found no damage or minimal damage." Dkt. # 33, at 3-6. As a preliminary matter, defendant does not object to plaintiffs' motion as to any rulings on pretrial motions; any mention of settlement negotiations or offers; any statements or insinuations as to plaintiffs' insurance rate increasing as a result of plaintiffs' claim or this litigation. Dkt. # 46, at 2. Therefore, the Court finds that plaintiffs' motion in limine as to those three items should be granted.

Moreover, defendant "does not intend to offer any testimony or argument of any kind about its non-testifying consultant, Mr. Heffernan. . . . State Farm has produced all photographs Mr. Heffernan took at the inspection. While [those] photographs may be admissible . . . no opinion evidence should be admitted." Id. at 4. Accordingly, defendant argues that "[n]either party should be allowed to argue or insinuate that Mr. Heffernan made any opinions as to the condition of plaintiffs' roof." Id. Thus, the Court finds that plaintiffs' motion in limine should be granted as to precluding either party from presenting any opinion evidence as to Mr. Heffernan's findings.

Finally, plaintiffs request that the Court exclude any evidence "regarding [p]laintiffs' net worth, financial condition or personal finances" because evidence of "financial status is generally not relevant, except for punitive damages." Dkt. # 33, at 4. Defendant responds that it "has no intention of arguing that [p]laintiffs' ability to pay for repairs or replacement of the roof affected its obligations under the [p]olicy, but that is not the only possible reasons that [p]laintiffs' financial condition may be relevant." Dkt. 46, at 3. For example, plaintiffs' "claims for financial losses, stress, worry, anxiety, uncertainty, embarrassment, and emotional damages places [p]laintiffs' financial condition at issue." Id. The Court agrees with defendant.

Plaintiffs rely on Garcia v. Sam Tanksley Trucking, Inc., 708 F.2d 519, 522 (10th Cir. 1983), for the proposition that "[r]eference to the wealth or poverty of either party, or reflection on financial disparity, is clearly improper argument." However, in Garcia, plaintiffs' counsel made "appeals to class prejudice" in closing argument by contrasting defendant's wealth with plaintiffs' poverty, which the Tenth Circuit found was "clearly improper[.]" Id. Here, defendant asserts that plaintiffs' claims for bad faith damages put plaintiffs' financial status at issue, which is distinguishable from contrasting the relative wealth of either party to improperly appeal to a jury's potential class prejudice. Indeed, plaintiffs' financial condition may be relevant to the extent of bad faith damages, including: stress, anxiety, and uncertainty. For example, the prospect of State Farm not covering the roof replacement cost may be far more stressful or anxiety-inducing for a plaintiff who is otherwise unable to afford a roof replacement, and is thus helpless in the face of the inevitable premature deterioration and failure of his roof. Therefore, the Court finds that plaintiffs' motion in limine as to plaintiffs' net worth, personal finances, and financial condition is preliminarily denied without prejudice; however, plaintiffs may make any well-founded objections at trial.

20

      c.      *Defendant's Motion to Limit Certain Expert Testimony (Dkt. # 32)*

Defendant moves, pursuant to Fed. R. Civ. P. 26, to limit "the [trial] testimony of [p]laintiffs' expert, Chris Ramseyer . . . to only those opinions which are disclosed in his expert report, and to limit the testimony of [p]laintiffs' non-retained, non-report witnesses[.]" As to plaintiffs' retained expert, defendant argues that, "[i]n accord with his report, Mr. Ramseyer's scope of work and anticipated opinions at trial include his assessments of the condition of [p]laintiffs' roof and his recommendation for the roof, which [is] replacement." Dkt. # 32, at 2. Defendant further argues that Mr. Ramseyer's report "has no opinions with respect to: insurance (coverage, standards, policies, availability, or the like); roofing industry standards; roofing manufacturing standards; interior damage to the house; damage amounts (or cost to replace a roof); or any other topic not specifically included in his report." Id. Rule 26 states, in pertinent part, that a retained expert witness must provide a written report, and the report "must contain [] a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Accordingly, Mr. Ramseyer was required to disclose all of the opinions to which he will testify at trial. Thus, the Court finds that defendant's motion to limit Mr. Ramseyer's trial testimony to the opinions (and the reasons and bases for those opinions) contained in his expert report (Dkt. # 35-1) should be granted.

Finally, defendant moves, pursuant to Fed. R. Civ. P. 26(a)(2)(C), to limit the testimony of plaintiffs' three "non-retained experts[:]" Brianna Case, Kyle Baker, and Steven Ragsdale, because plaintiffs' Rule 26 expert testimony disclosure as to these three witnesses was insufficient. Dkt. # 32, at 4; see also Fed. R. Civ. P. 26(a)(2)(C). Plaintiffs respond that Brianna Case, Kyle Baker, and Steven Ragsdale are "percipient witnesses, who had interactions with [p]laintiffs and/or State Farm

during the claim process and before this lawsuit was filed.  These witnesses have not been retained by [p]laintiffs . . . as experts.  However, these witnesses do have knowledge in their respective fields–roofing and insurance adjusting."  Dkt. # 48, at 5.

Rule 26(a)(2)(C) requires that, for expert witnesses who do not provide a written report, plaintiffs must include in their disclosure to defendant 1) the "subject matter" of the witness's expert opinion testimony; and 2) a "summary of the facts and opinions to which the witness is expected to testify."  Thus, the applicability of Rule 26(a)(2)(C)'s requirements turns on whether Ms. Case, Mr. Baker, and Mr. Ragsdale are lay witnesses within the meaning of Fed. R. Evid. 701, or expert witnesses within the meaning of Fed. R. Evid. 702.  Under Rule 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception"; "(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue"; and "(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Rule 702 states that a "witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue"; "(b) the testimony is based on sufficient facts or data"; "(c) the testimony is the product of reliable principles and methods"; and "(d) the expert has reliably applied the principles and methods to the facts of the case."

Here, plaintiffs offer the testimony of Ms. Case, Mr. Baker, and Mr. Ragsdale as lay witnesses with personal knowledge of relevant facts at issue in this case.  That these witnesses have "particularized knowledge" does not automatically place their testimony within the purview of Rule 702 (and thus subject to Rule 26(a)(2)(C) disclosure requirements).  See Fed. R. Evid. 701 advisory

committee's note to 2000 amendments ("For example, most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. . . . Such opinion testimony is admitted not because of experience, training, or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business").   Rule 702 creates standards that permit experts with <u>no</u> personal knowledge of any relevant facts of a case to form opinions and testify to those opinions at trial.  By contrast, plaintiffs assert that they do not intend to offer Ms. Case, Mr. Baker, and Mr. Ragsdale as experts.  Consequently, these witnesses may testify--as lay witnesses-- to their personal knowledge and opinions that were rationally formed based on their perception.  Ms. Case, Mr. Baker, and Mr. Ragsdale's perceptions will inevitably be influenced by their particularized knowledge in insurance adjusting and roofing, respectively.   Accordingly, Rule 26's disclosure specifications for lay witnesses requires that plaintiffs provide "the name, and if not previously provided, the address and telephone number of each witness . . . [and] these disclosures must be made at least 30 days before trial." Fed. R. Civ. P. 26(a)(3)(A)-(B).  Plaintiffs "identified Ms. Case, Mr. Baker, and Mr. Ragsdale as fact witnesses on their preliminary witness list[,]" Dkt. # 48, at 6, as well as on their September 13, 2021 pretrial disclosures (Dkt. # 63).  Therefore, plaintiffs are in compliance with Rule 26, and defendants had ample notice of Ms. Case, Mr. Baker, and Mr. Ragsdale's proposed lay witness testimony.

Moreover, even if Ms. Case, Mr. Baker, and Mr. Ragsdale's testimony crossed the line into expert testimony within the meaning of Rule 702, defendant had adequate notice of these witnesses' anticipated testimony under Rule 26(a)(2)(C).  In their September 13, 2021 pretrial disclosures (Dkt.

# 63), plaintiffs indicated that Brianna Case will testify as to "[a]ll issues" and that she and Kyle Baker will testify as "[p]ercipient witness[es] as to involvement in the claim as [p]laintiffs' public adjuster[s], inspection of [p]laintiffs' property, identification of storm [d]amage, causation, damage assessment and scope [o]f work, and methods of repair.  Testimony [r]egarding observations, conversations and [i]nspection(s) of [p]laintiffs' property."  Dkt. # 63, at 2.  Further, plaintiffs disclosed that Steven Ragsdale will testify as to "[a]ll issues[,]" including "observations, conversations and inspection(s) of [p]laintiffs' property.  Percipient witness as to involvement in the claim as [p]laintiffs' roofer, inspection of [p]laintiffs' property, identification of storm damage, causation, damage assessment and scope of work, and methods of repair."  Id.

The primary purpose of Rule 26's disclosure requirements is to give the parties notice of all of the anticipated evidence and to prevent any unfair surprise at trial.  Cook v. Rockwell Int'l Corp., 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006) ("The purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial"); see also Dahlberg v. MCT Transp., LLC, 571 Fed. App'x 641, 648 (10th Cir. 2014) (citing Cook, 580 F. Supp. 2d at 1122); Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995) (applying Rule 26's rationale, that is, "the elimination of unfair surprise to the opposing party and the conservation of resources").  Here, Steven Ragsdale and Brianna Case were deposed by defendant, and plaintiffs indicate that Kyle Baker's proposed testimony is virtually identical to Ms. Case's.  Therefore, the Court finds that defendant had adequate notice of these witnesses' opinions and proposed testimony.

In sum, the Court preliminarily finds that, based on plaintiffs' representations to the Court, Ms. Case, Mr. Baker, and Mr. Ragsdale's proposed testimony does not fall within the purview of Rule 702 and Rule 26(a)(2)(C).  Notwithstanding, even if Rule 702 and Rule 26(a)(2)(C) did apply, defendant had adequate notice of the proposed testimony.  Consequently, defendant's motion to limit the testimony of Steven Ragsdale, Brianna Case, and Kyle Baker should be preliminarily denied. However, defendant may raise any well-founded objections at trial.

**IT IS THEREFORE ORDERED** that defendant's motion for partial summary judgment (Dkt. # 34) is **denied** because genuine disputes of material fact exist such that a reasonable jury could find for plaintiffs as to their bad faith claim (count 2) and the issue of punitive damages; and plaintiffs' motion for an extension of time to respond to defendant's supplement (Dkt. # 105) is **moot**.

**IT IS FURTHER ORDERED** that defendant's omnibus motion in limine (Dkt. # 31) is **granted in part** as to 1) testimony regarding or referencing any of the defendant's advertising, mottos, or slogans; 2) mention of the Unfair Claims Settlement Practices Act; 3) argument as to State Farm having a fiduciary duty; 4) golden rule arguments; 5) statements or references to any discovery, motions, or pretrial disputes; 6)  reference to any settlement discussions or proposals in this case, or to any offer of judgment made by any party; 7) defendant's litigation conduct insofar as its litigation conduct was not a known or knowable fact as to plaintiffs' bad faith claim at the time of plaintiffs' request for payment pursuant to the policy; and 8) Mr. Ragsdale testifying about Mr. Stretz's conversation with the adjuster.  Defendant's omnibus motion in limine (Dkt. # 31) is **denied in part** as to 1) plaintiffs alleging contract damages that exceed the amount disclosed in their Rugged Roofing expert report, and 2) plaintiffs presenting evidence of a specific amount or range of bad faith

damages; **denied in part without prejudice** as to Mr. Ragsdale, Mr. Stretz, and Ms. Case's affidavits; and **moot in part** as to documents, exhibits, or information not provided within a reasonable time before trial.

**IT IS FURTHER ORDERED** that plaintiffs' motion in limine (Dkt. # 33) is **granted in part** as to 1) any rulings on pretrial motions; 2) any mention of settlement negotiations or offers; 3) any statements or insinuations as to plaintiffs' insurance rate increasing as a result of plaintiffs' claim or this litigation; and 4) either party presenting any opinion evidence as to Mr. Heffernan's findings. Plaintiffs' motion in limine (Dkt. # 33) is **denied in part without prejudice** as to plaintiffs' net worth, personal finances, and financial condition.

**IT IS FURTHER ORDERED** that defendant's motion to limit certain expert testimony (Dkt. # 32) is **granted in part** as to limiting Mr. Ramseyer's expert opinion testimony to those opinions contained in his written expert report; and **denied in part without prejudice** as to limiting the witness testimony of Brianna Case, Kyle Baker, and Steven Ragsdale.

**DATED** this 23rd day of March, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

26